# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : : : | No.: 4:18-CV-02096 |
| Plaintiff, | : : : | (Judge Brann) |
| v. | : : | |
| CERTAIN EASEMENTS AND RIGHTS OF WAY NECESSARY TO CONSTRUCT, OPERATE AND MAINTAIN A 30" NATURAL GAS TRANSMISSION PIPELINE, IN NORTHMORELAND TOWNSHIP, WYOMING COUNTY, PENNSYLVANIA, TAX PARCEL NUMBER 19-013.0-057-00-00-00, LARRY WILSON and MARY ANN WILSON, and ALL UNKNOWN OWNERS. | : : : : : : : : : : : : : : : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**JANUARY 8, 2019**

## I. BACKGROUND

On October 26, 2018, Plaintiff, Transcontinental Gas Pipe Line Company, LLC, hereinafter "Transco," filed a complaint in condemnation pursuant to Federal Rule of Civil Procedure 71.1 and the Natural Gas Act, 15 U.S.C. § 717. Previously, on February 3, 2017, the Federal Energy Regulatory Commission,

1

hereinafter "FERC," granted Transco a certificate of public convenience and necessity.

This case is unlike 'typical' condemnation matters filed before the Court pursuant to the Natural Gas Act, in which, typically, the natural gas company plaintiff files suit after finding itself unable to negotiate the amount of compensation to be paid for the easement sought. Here, Transco and the landowners, Larry and Mary Ann Wilson, hereinafter "the Wilsons," did reach an agreement[1] as to certain temporary and permanent easements on their Wyoming County property for Transco to construct, operate and maintain a pipeline for the Atlantic Sunrise Project.[2] Not only have Transco and the Wilsons reached an easement agreement, but Transco has installed the pipeline on the property and the project has been placed in service.

According to the Wilsons' counsel, the Wilsons discovered "at or around the time of construction" that there was a section of 0.64 acres that was not included in the mapping of the Wilson lands, and therefore, also not included in the easement agreement between the Wilsons and Transco; FERC had previously approved the pipeline traversing through this 0.64 acres.

---

[1] ECF No. 1 at 22-53.
[2] The Atlantic Sunrise Project is a natural gas pipeline project by Transco to construct new and make modifications to existing, compressor stations; construct new and make modifications to existing, meter stations; make modifications to existing regulator stations; and make modifications to existing mainline valve locations in South Carolina, North Carolina, Virginia, Maryland, and, as largely relevant here, 199.5 miles through Pennsylvania.

Transco determined, belatedly, that due to an error in its abstract of title of the Wilson property, the 0.64 acre parcel was incorrectly noted as owed by neighboring landowners, the Clarks. Accordingly, when Transco negotiated payment and an easement agreement as to this 0.64 acres, it was erroneously negotiated with the Clark family. In July 2018, the Wilsons notified Transco of the error. Transco then performed a second abstract of title and concluded that there had been an error, and that the 0.64 acres previously attributed to the Clarks was, in fact, owned by the Wilsons.

In response, Transco has offered an additional $12,800 in just compensation to accommodate taking of the additional 0.64 acres of land, an offer the Wilsons rejected.[3] Transco has now completed all stages of the Atlantic Sunrise Project except for restoration, which is ongoing. Transco needs to condemn these 0.64 acres at issue in order to maintain the pipeline and to enter the property to maintain environmental controls and other measures as required by the FERC Order and by the County Conservation District.[4]

On November 21, 2018, Transco filed a motion for partial summary judgment and, subsequently on December 10, 2018, a motion for preliminary

---

[3] ECF No. 18-1 at 76-7.
[4] 15 U.S.C.A. § 717f (h)

injunction.⁵ A hearing was held on these motions on January 4, 2019. After taking testimony⁶ and hearing argument, both motions are granted.

## II. DISCUSSION

### a. Partial Summary Judgment will be granted in Transco's favor.

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."⁷ A fact is "material" where it "might affect the outcome of the suit under the governing law."⁸ A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party."⁹

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.¹⁰ The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (ii) demonstrating to the Court that the nonmoving

---

⁵ ECF Nos. 10 and 13.
⁶ Curiously, the Wilsons did not appear to testify.
⁷ Fed. R. Civ. P. 56(a).
⁸ *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
⁹ *Id.*
¹⁰ *In re Bressman*, 327 F.3d 229, 237 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).

party's evidence is insufficient to establish an essential element of the nonmoving party's case.[11]

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[13]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[14] Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[15]

---

[11] *Id.* at 331.
[12] *Anderson*, 477 U.S. at 250.
[13] Fed. R. Civ. P. 56(c)(1); *see also Anderson*, 477 U.S. at 248–50.
[14] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).
[15] Fed. R. Civ. P. 56(e)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but instead to determine whether there is a genuine issue for trial.[16] Credibility determinations are the province of the factfinder, not the district court.[17] Although the court may consider any materials in the record, it need only consider those materials cited.[18]

With that standard of review in mind, Section 717f(h) of the Natural Gas Act grants the right of eminent domain for construction of pipelines, as follows:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided,* That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000.

"To condemn the easements at issue, [the gas company] must demonstrate (1) it holds a FERC certificate of public convenience and necessity; (2) the rights-of-way

---

[16] *Anderson*, 477 U.S. at 249.
[17] *BWM, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).
[18] Fed. R. Civ. P. 56(c)(3).

6

to be condemned are necessary for the construction, operation, and maintenance of the pipeline; and (3) it has been unable to acquire the proposed rights-of-way from the landowner."[19] "[A] certificate of public convenience and necessity [therefore] gives its holder the ability to obtain automatically the necessary right of way through eminent domain, with the only open issue being the compensation the landowner defendant will receive in return for the easement."[20]

In the case at bar, I find that there is no genuine issue of material fact as to the three conditions precedent. FERC has issued a certificate of public convenience and necessity to Transco, a natural gas company as defined by the Natural Gas Act 15 U.S.C. § 717a(6). The rights-of-way to be condemned are necessary for the construction, operation, and maintenance of the pipeline. "By issuing the Certificate [of public necessity] to [Plaintiff], FERC has determined that the Subject Property is necessary to the operation of the Pipeline[; t]his determination cannot be challenged by Defendants."[21] Finally, despite its attempts

---

[19] *Columbia Gas Transmission, LLC v. An Easement To Construct,* No. CV 16-1243, 2017 WL 544596, at *3 (W.D. Pa. Feb. 9, 2017)

[20] *Columbia Gas Transmission, LLC v. 1.01 Acres, More or Less in Penn Tp., York County, Pa., et. al*, 768 F.3d 300, 304 (3d Cir. 2014).

[21] *WBI Energy Transmission, Inc.*, No. CV 14-130-BLG-SPW, 2017 WL 532281, at *3 (D. Mont. Feb. 8, 2017) *citing Williston Basin Interstate Pipeline Company v. Property Interests Located in Carbon County*, Montana, 2010 WL 5104991 (D. Mont. 2010) ("By issuing the Certificate of Public Convenience and Necessity under the Natural Gas Act, FERC has already determined that Defendants' property interests are necessary. Defendants have not offered any arguments to the contrary, and even if they did, such arguments would be an improper collateral attack on the FERC certificate."); *Williams Natural Gas Co. v. City of Oklahoma City* 890 F.2d 255, 262 (10th Cir. 1989); *Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land*, 210 F.Supp.2d 1253, 1256 (D. Kan. 2002) ("Once the holder of a FERC certificate of public convenience and

7

through good-faith negotiations, Transco has been unable to acquire the proposed rights-of-way from the landowner for the 0.64 acres at issue here.

Not only do I find that Transco has met the three conditions precedent for the Atlantic Sunrise Project, but so too has the United States Court of Appeals for the Third Circuit. As recently as October 30, 2018, the Third Circuit explained that:

> Transcontinental has met all three requirements of § 717f(h). The administrative review leading up to the certificate of public convenience and necessity lasted almost three years and, as is evident from the record, included extensive outreach and many avenues of public participation. The process started when FERC granted the company's request to use the pre-filing process on April 4, 2014. On July 29, 2014, FERC issued a Notice of Intent to Prepare an Environmental Impact Statement (EIS) for the Planned Atlantic Sunrise Expansion Project, Request for Comments on Environmental Issues, and Notice of Public Scoping Meetings (NOI). The NOI was then mailed to 2500 interested parties. It invited comment on the project's environmental issues from all levels of government, interest groups, Native American tribes, affected property owners, local media and libraries, and other interested parties. The Commission heard from 93 speakers and received over 600 written comments. On March 31, 2015, the company filed its application to construct and operate the Atlantic Sunrise project. FERC mailed letters to potentially affected landowners (as well as to government officials and other stakeholders) on October 22, 2015. FERC issued the draft EIS on May 5, 2016, and published it on May 12, 2016. At four public meetings in June 2016, FERC heard from 203 speakers and received over 560 written comments and 900 identical letters on the draft EIS. Two alternative pipeline routes were identified following the draft EIS, and additional notices were mailed to potentially affected stakeholders, in response to which FERC received 25 additional comment letters. FERC issued the final EIS on December 30, 2016, and published it on January 9, 2017.

---

necessity asks a district court to enforce its right to condemn, the findings of the FERC certificate are treated as conclusive.").

The Commission issued a certificate of public convenience and necessity to Transcontinental—the first requirement of § 717f(h) of the NGA—on February 3, 2017. It found "[b]ased on the benefits" of the pipeline, "the minimal adverse effects on landowners or surrounding communities," and "the absence of adverse effects on existing customers and other pipelines and their captive customers, ... that the public convenience and necessity require[d] approval" of the project "subject to the conditions" set out in the Order Issuing Certificate. Those conditions included requirements that Transcontinental, inter alia, construct the pipeline and make it available for service within three years of the date of the order, comply with certain environmental conditions, and follow certain rate schedules. FERC also required that Transcontinental execute firm contracts for volumes and service terms "equivalent to those in its precedent agreements" before construction. The Order Issuing Certificate contained information on those binding precedent agreements, comprising 100% of the capacity generated by the project, with nine shippers. The Landowners sought rehearing and included a request to stay the Order Issuing Certificate and construction of the project, but FERC tolled the rehearing request on March 13, 2017, denied the stay requests on August 31, 2017, and finally denied the rehearing request on December 6, 2017.

The second and third requirements for using the eminent domain powers under § 717f(h) of the NGA are that the gas company negotiate with the landowner for the necessary right of way and that value of the right of way exceeds $3000. Transcontinental extended written offers of compensation exceeding $3000 to each of the Landowners, but these offers were not accepted. Transcontinental thus satisfied the second and third requirements.[22]

Accordingly, because the three elements in the statute have been met, Transco has the substantive right to condemn the property at issue, and partial summary judgment will be entered in favor of Transco.

---

[22] *Transcon. Gas Pipe Line Co., LLC v. Permanent Easements for 2.14 Acres & Temp. Easements for 3.59 Acres in Conestoga Twp., Lancaster Cty., Pennsylvania*, Tax Parcel No. 1201606900000, 907 F.3d 725, 729–31 (3d Cir. 2018) (Roth, J.).

### b. A preliminary injunction will be entered in Transco's favor.

Because of the unique procedures associated with federal condemnation actions arising under the Natural Gas Act, Plaintiff must first establish that it has a substantive right to condemn the property at issue. Once a substantive right has been found, a court "may exercise equitable power to grant the remedy of immediate possession through the issuance of a preliminary injunction" pursuant to Federal Rule of Civil Procedure 65, which governs the granting of preliminary injunctions.[23] "The [Natural Gas Act] does not allow for "quick take" powers; in a condemnation action under the Act, we must evaluate access to property under the preliminary injunction rubric of Federal Rule of Civil Procedure 65(c)."[24] Rule 65 provides in pertinent part:

**(a) Preliminary Injunction.**

> **(1)** *Notice.* The court may issue a preliminary injunction only on notice to the adverse party.
>
> **(2)** *Consolidating the Hearing with the Trial on the Merits.* Before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. Even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. But the court must preserve any party's right to a jury trial
> . . .

---

[23] *E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 828 (4th Cir. 2004); *see also Constitution Pipeline Co., LLC. v. A Permanent Easement for 1.92 Acres*, 2015 WL 1219524, *2 (M.D. Pa. March 17, 2015).

[24] *Columbia Gas Transmission, LLC v. An Easement To Construct*, No. CV 16-1243, 2017 WL 544596, at *4 (W.D. Pa. Feb. 9, 2017)

10

**(c) Security.** The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

"It is well established that 'a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial or on the merits.'"[25] "A preliminary injunction[, however,] is an extraordinary remedy never awarded as of right."[26]

Generally, a party seeking a preliminary injunction must establish four factors: (1) a reasonable probability of success on the merits of their argument; (2) irreparable harm to the movant in the absence of relief; (3) granting the preliminary injunction will not result in greater harm to the nonmoving party; and (4) the public interest favors granting the injunction.[27] In the case at bar, the four factors favor entering the preliminary injunction as requested by Transco.

First, Transco has succeeded on the merits. Unlike preliminary injunctions in other types of civil actions, those sought in condemnation cases also request an entry of judgment on the merits contemporaneously with the motion for preliminary injunction. Therefore, given the above grant of partial summary

---

[25] *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 718 (3d Cir. 2004) (*citing University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)).
[26] *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 24 (2008).
[27] *See American Exp. Travel Related Services, Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012).

judgment finding Transco's substantive right to condemn, the likelihood of success on the merits is established. Accordingly, this factor favors Transco.

Second, Transco will suffer irreparable harm in the absence of preliminary relief. Transco set forth several examples of irreparable harm both in its papers and at the January 4, 2019 hearing. Transco will lose significant revenues (approximately $33,000,000 (thirty-three million dollars) per month) because the pipeline would not be able to remain in service if this portion of the pipeline had to be removed and resulted in a gap in the line.

Additionally, there are safety risks if Transco were to be prohibited from maintaining the integrity of the line now that it is in service. The Pipeline Safety Act[28] sets forth a number of maintenance and operation regulations with which it must comply. Transco can only comply with those regulations if it has possession of, and access to, the necessary rights-of-way.

Moreover, the pipeline is in service and providing a natural gas supply for the winter heating season. David Sztroin, the pipeline project manager for the Atlantic Sunrise Project testified that the pipeline was placed into service October 6, 2018. Transco must have immediate access to this portion of the pipeline so that the supply is not cut off by a gap in the line, which could affect numerous

---

[28] 49 U.S.C. § 60101.

customers who rely on natural gas as their winter heating source. In sum, this factor weighs strongly in favor of Transco.

Third, granting the preliminary injunction will not result in greater harm to the landowner. The pipeline has already been dug and the soil revegetated on this additional 0.64 acres of the Wilson's land. The landowners have received compensation for much of the easement, and the only remaining issue would be the compensation due for this 0.64 acres that was mistakenly not included in the Wilson agreement.[29]

Transco has the substantive right to possession. "This is simply a timing argument because productive capacity would still be disturbed, albeit at a later time, if just compensation was determined first."[30] "The Fifth Amendment guarantees the landowners just compensation for their land no matter when the condemnor takes possession."[31] "We fully understand that condemnation often forces landowners to part with land that they would prefer to keep for many reasons, including sentimental ones."[32] "However, the Supreme Court long ago recognized that 'in view of the liability of all property to condemnation for the common good, loss to the owner of nontransferable values deriving from his

---

[29] Impressively, Transco asserted at the hearing that this mistake was the only mistake Transco made in the 1,100 properties through which the pipeline traverses.
[30] *E. Tennessee Nat. Gas Co. v. Sage*, 361 F.3d 808, 829 (4th Cir. 2004)
[31] *Id.*
[32] *Id.*

unique need for property or idiosyncratic attachment to it ... is properly treated as part of the burden of common citizenship.'"[33]

It is commonplace for district courts to order immediate possession after FERC has taken a lengthy period of time determining whether or not to issue a certificate of public convenience and necessity. "District courts in a number of jurisdictions grant immediate possession in the form of a preliminary injunction to a gas company that has established its right to condemn under the [Natural Gas Act]."[34]

---

[33] *Id citing Kimball Laundry Co. v. United States*, 338 U.S. 1, 5, (1949).
[34] *Tennessee Nat. Gas Co. v. Sage*, 361 F.3d at 827 *citing Northwest Pipeline Corp. v. The 20' by 1,430' Pipeline Right of Way*, 197 F.Supp.2d 1241, 1245 (E.D.Wash.2002)("[w]here there is no dispute about the validity of [the gas company's] actual right to the easement," denying authority to grant immediate possession "would produce an absurd result"); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D.Ill.2002)(immediate possession proper when condemnation order has been entered and preliminary injunction standards have been satisfied); *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F.Supp.2d 299, 301 (N.D.Ill.2000)(same); *see also N. Border Pipeline Co. v. 127.79 Acres of Land,* 520 F.Supp. 170, 173 (D.N.D.1981) ("the Court believes the circumstances of this case warrant the exercise of inherent powers"); *Williston Basin Interstate Pipeline Co. v. Easement and Right–of–Way Across .152 Acres of Land*, 2003 WL 21524816 (D.N.D.2003)(same); *Tenn. Gas Pipeline Co. v. New England Power, Inc*., 6 F.Supp.2d 102, 104 (D.Mass.1998)(same); *USG Pipeline Co. v. 1.74 Acres*, 1 F.Supp.2d 816, 825–26 (E.D.Tenn.1998)(same); *Kern River Gas Transmission Co. v. Clark County*, 757 F.Supp. 1110, 1117 (D.Nev.1990)(same); *Humphries v. Williams Natural Gas Co*., 48 F.Supp.2d 1276, 1280 (D.Kan.1999)("[I]t is apparently well settled that the district court does have the equitable power to grant immediate entry and possession [under the Natural Gas Act]."); *Rivers Electric Co., Inc. v. 4.6 Acres of Land*, 731 F.Supp. 83, 87 (N.D.N.Y.1990)(granting immediate possession under a statute similar to the Natural Gas Act). *Cf. Commercial Station Post Office, Inc. v. United States*, 48 F.2d 183, 184–85 (8th Cir.1931)(holding that government officer who exercises statutory authority to file condemnation action may take immediate possession of the property even though there is no express provision authorizing pre-judgment possession).

Moreover, "the court does not have jurisdiction to review a collateral attack on the FERC certificate."[35] "When a property owner comes to federal court to challenge FERC's findings in the certificate of public convenience and necessity, the property owner thereby mounts what in essence is a collateral attack on that certificate."[36] "District courts have limited jurisdiction in Natural Gas Act condemnation actions."[37] "This court's role is mere enforcement."[38]

For all of these reasons, this factor favors Transco.

Fourth, granting the preliminary injunction is in the public interest as it will give the general public access to natural gas from the Marcellus Shale deposits for heating their homes. "Congress passed the Natural Gas Act and gave gas companies condemnation power to ensure that consumers would have access to an adequate supply of natural gas at reasonable prices."[39] This factor, therefore, also favors Transco.

---

[35] *Williams Natural Gas Co. v. City of Okla. City*, 890 F.2d 255, 262 (10th Cir. 1989).
[36] *Steckman Ridge GP, LLC v. Exclusive Natural Gas Storage Easement Beneath 11.078 Acres*, 2008 U.S. Dist. LEXIS 71302, 13-14 (W.D. Pa. Sept. 19, 2008) (Gibson, J.).
[37] *Sabal Trail Transmission, LLC v. +/- 0.41 Acres of Land in Hamilton Cty. Florida,* No. 3:16-CV-274-TJC-JBT, 2016 WL 3188985, at *2 (M.D. Fla. June 8, 2016), *see also* 15 U.S.C.A. § 717r(b); *Guardian Pipeline, L.L.C. v. 529.42 Acres of Land*, 210 F. Supp. 2d 971, 974 (N.D. Ill. 2002) ("The validity and conditions of the FERC Certificate cannot be collaterally attacked in district court."); *Williams Natural Gas Co. v. City of Oklahoma City*, 890 F.2d 255, 262 (10th Cir.1989), cert. denied, 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990) ("Review of the validity of the certificate is the exclusive province of the appropriate court of appeals.").
[38] *Id. citing Tennessee Gas Pipeline Co. v. Massachusetts Bay Transportation Authority,* 2 F.Supp.2d 106, 110 (D.Mass.1998).
[39] E. *Tennessee Nat. Gas Co. v. Sage*, 361 F.3d at 830, *citing Clark v. Gulf Oil Corp.,* 570 F.2d 1138, 1145–46 (3d Cir.1977); *Fla. Power & Light Co. v. Federal Energy Regulatory Comm'n*,

While the Court understands and appreciates the arguments advanced by the Defendants, these arguments are unavailing.

### c. A bond will be Ordered.

The Constitution "does not provide or require that compensation be paid in advance of the occupancy of the land to be taken. But the owner is entitled to reasonable, certain, and adequate provision for obtaining compensation before his occupancy is disturbed."[40] Accordingly, Transco will be ordered to post a surety bond with the Clerk of Court on or before January 22, 2019.

### d. The Order will contain an enforcement mechanism

In previous actions, Transco indicated that both landowners (not the Wilsons) and third parties had expressed their intention to engage in civil disobedience. To thwart any potential problems before they start, the Order will contain an enforcement mechanism, should this issue arise with this property.

I have the authority and "inherent power to enforce compliance with [its] lawful orders through civil contempt."[41] Defendants and any third parties who are contemplating violating the terms of this Memorandum Opinion and the accompanying Order are on notice that the Order contains an enforcement mechanism so that any person unwise enough to violate its terms shall be haled

---

598 F.2d 370, 379 (5th Cir.1979); *Public Serv. Comm'n of Ky. v. Federal Energy Regulatory Comm'n*, 610 F.2d 439, 442–43 (6th Cir.1979).
40 *Cherokee Nation v. S. Kan. Ry. Co.*, 135 U.S. 641, 659 (1890).
41 *Cooper v. Aaron*, 358 U.S. 1 (1958); *and see Shillitani v. United States*, 384 U.S. 364 (1966).

into Court by the United States Marshals Service and a contempt hearing conducted.[42]

### III. CONCLUSION

An Order will issue this date granting Plaintiffs Motions for Partial Summary Judgment and for Preliminary Injunction. Plaintiff will be ordered to post a surety bond with the Clerk of Court. Commencing immediately, pursuant to the Order of the Federal Regulatory Commission dated February 3, 2017, Plaintiff Transcontinental Gas Pipe Line Company, LLC is granted access to, possession of and entry to the rights of way allowed under that Order for the above captioned property. The Order will include an enforcement mechanism to deter those who seek to obstruct Plaintiff.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[42] *Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir. 1990).